IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| GRAY MANUFACTURING COMPANY, INC., | ) | |
| | ) | Civil Action No. 5:09-cv-06024-HFS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERTIL B.V. and | ) | |
| STERTIL-KONI U.S.A., INC. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY
PROCEEDINGS PENDING REEXAMINATION OF
U.S. PATENT NOS. 6,634,641 AND 7,014,012**

**I.  INTRODUCTION**

In this action, Gray Manufacturing has accused Stertil B.V. and Stertil-Koni U.S.A., Inc. (collectively, "Stertil") of infringing U.S. Patent Nos. 6,634,461 ("the '461 patent") and 7,014,012 ("the '012 patent"), each entitled "Coordinated Lift System." The '461 patent is currently under *ex parte* reexamination and reissue (Reexamination Control No. 90/008,054 and Reissue Application No. 11/197,724). These proceedings were merged into one consolidated proceeding. The '461 patent had originally been filed with 49 claims. Presently, all claims of the '461 patent stand rejected over prior art but for claim 46, and claims 2, 4, 8-9, 11, 15, 17-18, 20, 26, 29, 31-43, and 45 have been cancelled. Stertil has now filed with the United States Patent and Trademark Office ("PTO") a Request for *Ex Parte* Reexamination of all 14 claims of the '012 patent and a Second Request for *Ex Parte* Reexamination of pending claims 1, 3, 5-7, 10, 12-14, 16, 19, 21-25, 27-28, 30, 44, and 46-49 of the '461 patent. In each of these Requests, Stertil has provided the PTO with substantial evidence, by way of additional prior art references

published more than one year before the priority date of the '461 and '012 patents, which were either not yet considered or not accurately considered in light of the recent changes in the law brought about by the Supreme Court ruling in *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007). These prior art references establish that the purported inventions claimed in the '461 and '012 patents are not, in fact, patentable.

The '461 patent is currently undergoing reexamination on previously provided prior art. In all likelihood, the PTO will grant Stertil's new Requests on both patents and proceed with reexamination of both the '461 and '012 patents in suit. Historically, the PTO has granted reexamination in 92% of all *ex parte* requests that have been filed. *See Ex Parte* Reexamination Filing Data – March 31, 2009 from the United States Patent and Trademark Office attached hereto as Exhibit 1. Perhaps more telling, of the reexaminations that have been completed, 75% emerge with some or all of the claims cancelled or changed. *Id*. Thus, there is a strong probability that reexamination of the subject patents will proceed and that the results of the reexamination will profoundly affect this litigation. Under the Patent Act, a patent owner may not obtain damages for a claim amended during reexamination that is not substantially identical to the original claim. 35 U.S.C. §§ 307, 252. Obviously, Stertil cannot be held liable for infringing any claim that is held to be invalid during reexamination. In addition, virtually any amendment made during reexamination in order to define over the prior art will result in a claim not substantially identical to the original. *See, e.g., Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1349 (Fed. Cir. 1998). Thus, reexamination is likely to affect the validity of the patents at issue and, assuming any claims survive reexamination, the damages Gray can collect in the event it is successful.

Accordingly, Stertil hereby moves the Court to stay the present litigation pending completion of the reexamination of the '461 and '012 patents in the PTO. A stay will allow the parties and the Court to better understand the proper scope of the claims of the patents-in-suit and will prevent unnecessary litigation and discovery should the claims be amended or cancelled during reexamination.

## II. DEFENDANTS' SUPPORTING ARGUMENT IN FAVOR OF A STAY

Courts have the inherent power to stay an action in the interests of judicial efficiency and economy, as well as that of counsel and the litigants. *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). With respect to patent actions, this includes "the authority to order a stay pending conclusion of a PTO reexamination." *Lifeline Technologies, Inc. v. Archer Daniels Midland Co.*, 2009 WL 995482, at *2 (E.D. Mo., April 14, 2009) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)). Courts typically take a "liberal policy" in favor of granting motions to stay proceedings pending the resolution of reexamination of the patent(s)-in-suit to avoid duplicative and potentially unnecessary proceedings. *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F.Supp. 1378, 1381 (N.D. Cal. 1994). The liberal policy taken by courts in granting stays pending the outcome of PTO reexamination proceedings is consistent with the purposes behind the reexamination legislation, which favors stays by district courts pending reexamination in order to provide the court with the benefits of the PTO's expertise to decide issues of validity without the need for expensive and lengthy infringement litigation. *Lifeline Tech.*, at *2; *Watlow Elec. Mfg. Co. v. Ogden Mfg. Co.*, 2006 WL 1892546, at *1 (E.D. Mo., July 10, 2006) (citing *Lentek Int'l, Inc. v. Sharper Image Corp.*, 169 F.Supp.2d 1360, 1362 (M.D. Fla. 2001)).

With this background in mind, courts generally consider three factors when determining whether to grant a stay pending reexamination: (1) whether discovery is complete and a trial

date has been set; (2) whether a stay of litigation will simplify the issues in question and facilitate trial of the case; and (3) whether a stay would unduly prejudice the non-moving party or would present a clear tactical disadvantage for that party.  *Lifeline Tech.*, at *2; *Watlow Elec. Mfg. Co.*, at *1 (citing *Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, 2004 WL 1968669, at *3 (S.D. Iowa Aug. 24, 2004)).  Here, all three factors favor a stay, and thus staying the action pending conclusion of Stertil's reexamination requests is appropriate.

### 1. Discovery Has Not Begun and No Trial Date Has Been Set

This case is only in its incipient stages.  Plaintiff has only recently served its first set of interrogatories and document requests on Defendants, Defendants have served no discovery requests on Plaintiff, and no trial date has been set.  In fact, the Initial Scheduling Conference with the Court has not been conducted and no discovery schedule has even been determined.  A stay at this point could save the parties and the Court substantial time and resources by avoiding any unnecessary or overbroad discovery.  If all pending claims are found invalid, Gray will have no patents to assert and the dispute will be resolved.  Moreover, since any claims which remain after reexamination will likely be substantially different in scope than the presently pending claims, staying the case and conducting discovery <u>after</u> the PTO has weighed in on the proper scope of the claims can "enable the parties and the court to focus discovery in a way that makes more efficient use of party and court resources as the case proceeds…"  *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 997 F.Supp. 93, 95 (D. Mass. 1997).  At this point, "[n]either the Court nor the parties have invested such resources as to make a stay pending completion of the reexamination inefficient and inappropriate, and therefore this factor weighs in favor of granting a stay."  *Spa Syspatronic, AG v. Verifone, Inc.,* 2008 WL 1886020 (E.D. Tex. April 25, 2008)

(granting stay prior to the Court issuing dates for *Markman* hearing and trial and while discovery was still in its infancy.)

Accordingly, because this case remains at its early stages, this factor weighs heavily in favor of granting a stay pending the outcome of the pending reissue/reexamination of the '461 patent and of the outstanding reexamination requests of both patents.

> 2. A Stay Will Narrow or Resolve the Issues in Question

Patents subjected to the reexamination process rarely emerge without amendment or cancellation of the claims. As mentioned above, 75% of all *ex parte* reexamination proceedings result in the amendment or cancellation of the claims. Thus, the final form of the claims will remain uncertain until conclusion of the reexamination procedures. By staying this action until the pending reexaminations have been concluded, and the final form of the claims known, the issues in question in this case will be substantially narrowed or resolved, preserving not only judicial resources, but also the time and money of the individual litigants.

Courts in this circuit have noted a large number of advantages to allowing reexamination before litigation. *See, e.g., Fisher Controls Co., Inc. v. Control Components, Inc.*, 443 F.Supp. 581 (S.D. Iowa 1977). For example, where the reexamination involves newly cited prior art, reexamination before litigation can allow the PTO, with its particular expertise, to evaluate the validity of the patent in view of the prior art before it is presented to the court. This accurately reflects the situation here, where Stertil has requested the PTO to reevaluate the validity of the '461 and '012 patents in view of several newly cited prior art documents. The patentability of the subject claims is further drawn into question by the recent change in the law regarding obviousness. In 2007, the Supreme Court issued an opinion in *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007) which significantly amplified the level of inventiveness required for

5

patentability, especially with respect to combinations of known elements. During original prosecution of both the '461 and '012 patents, the PTO was operating under an incorrect, pre-*KSR* standard that placed a heightened burden on the PTO to establish the obviousness of a claimed invention. Stertil has now shown in its Requests for Reexamination, with the help of newly cited art, that the claims of the '461 and '012 patents would have been obvious to one skilled in the art and are not patentable.

In addition, the scope of discovery can be streamlined by awaiting determination of the final form of the claims. At this point, it is unclear what claims will ultimately be asserted against Stertil in this action. With respect to the '461 patent, only claim 46 is presently valid, though no final determination has been issued. The rejection of all the claims of the '461 patent except for claim 46 in the present reexamination illustrates why a stay is appropriate. The '461 is now subject to a second reexamination request with additionally cited art which could further affect the scope and validity of the claims. It is believed that the claims of the '012 patent will also be amended and/or rejected through reexamination. Therefore, "[a]bsent a stay, the parties may end up conducting a significantly wider scope of discovery than necessary …" *Guthy-Renker Fitness, LLC v. Icon Health and Fitness, Inc*, 1998 WL 670240, at *2 (C.D. Cal. July 17, 1998). Even if the claims are not amended or cancelled during reexamination, arguments by Gray made during the reexamination proceeding may help clarify or even narrow the scope of the claims based on the principle of prosecution history estoppel, which applies equally to statements made during reexamination. *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). Further, the Court's task of construing the claims may be greatly simplified by awaiting a final determination on each of the outstanding reexamination proceedings where the claim language may change, be further explained by the patentee, or

cancelled altogether. *Lifeline Technologies, Inc. v. Archer Daniels Midland Co.*, 2009 WL 995482, at *2 (E.D. Mo., April 14, 2009) (allowing the PTO to complete reexamination before construing the patent terms "will simplify the case by facilitating the limiting of issues, defenses and evidence and possibly eliminating the case entirely by settlement or otherwise.")

Of course, the PTO may simply invalidate all of the claims in reexamination, which would render the entire case moot and alleviate the need for any protracted litigation between the parties. "In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed." *Echostar Technologies, Corp. v. TiVo, Inc.*, 2006 WL 2501494, at *2 (E.D. Tex, July 14, 2006); *see also Broadcast Innovation, LLC v. Charter Commc'ns, Inc.*, 2006 WL 1897165, at *2 (D. Colo. July 11, 2006) ("If no claims survive [reexamination], neither does the court's work.")

The reexamination proceedings will provide an opportunity for the issues of this case to be substantially narrowed or even totally resolved. Accordingly, this factor also weighs in favor of granting a stay.

### 3. A Stay Will Not Prejudice Gray

If this case is stayed pending the outcome of the reexamination proceedings, Gray will suffer no undue prejudice. Likewise, granting a stay will present no tactical advantage to Stertil. Instead, granting a stay will benefit both parties and the Court by simplifying the issues and facilitating trial of the case.

If this case is stayed, Gray retains the ability to collect money damages for any proven infringement, subject to the outcome of the reexamination, since damages for infringement continue to accrue during the period of the stay. *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603

7

(Fed. Cir. 1985). The availability of monetary damages provides Gray with an adequate remedy at law.

Moreover, a stay will not cause Gray to suffer any indefinite or undue delay in seeking a final determination of its rights in a court of law. In cases stayed pending reexamination, the PTO conducts those reexaminations with special dispatch, and actions on the reexamination proceedings will take precedence over other actions taken by the Examiner. *See* Manual of Patent Examining Procedure §2286.04, Eight Edition, Revised July 2008. Thus, "[r]eexamination does not threaten protracted or indefinite delay, as the reexamination statute directs the PTO to conduct reexamination proceedings with 'special dispatch,' and since the patent[s] involved [are] involved in litigation, the reexamination will have priority over all other cases." *Spa Syspatronic, AG v. Verifone, Inc.*, 2008 WL 1886020, at *2 (E.D. Tex. Apr. 25, 2008) (citations omitted). Besides, "not all delay is prejudicial and … any cost of the delay is likely offset by the gains to be achieved by obtaining the PTO's expert guidance on these matters." *Card Tech. Corp. v. Datacard Corp.*, 2007 WL 551615, at *2 (D. Minn. Feb. 21, 2007).

Additionally, Stertil is legally entitled to seek reexamination of the two subject patents in the PTO just as Gray is legally entitled to seek exclusive control over its inventions by obtaining a valid patent. Moreover, Gray was the first to muddy the waters as to the validity and scope of the subject patents by filing for a reissue of the '461 patent. "Courts have observed…that 'parties having protection under the patent statutory framework may not complain of the rights afforded to others by that same statutory framework.'" *Interplast Group, LTD v. Coroplast, Inc.*, 2009 WL 1774313, at *3 (E.D. Mo. June 23, 2009) (citing *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *3 (N.D. Cal. Mar., 16 2006) (internal quoted cases omitted)).

Thus, Gray will suffer no undue prejudice if this case is stayed pending reexamination of the subject patents, and this factor weighs in favor of granting the stay.

## III. CONCLUSION

In sum, all of the factors typically considered in determining whether to grant a stay pending reexamination point in favor of staying this case. This case is only in its incipient stages and discovery is just beginning. Further, reexamination will narrow or even resolve the issues in this case, benefiting both the parties and the Court by promoting judicial economy and reducing burdens on the parties of duplicative or unnecessary discovery. Finally, a stay will not unduly prejudice Gray or provide Stertil with a tactical advantage since damages for any infringement of the subject patents will continue to accrue during the stay period. Accordingly, Stertil respectfully requests that the Court stay all patent claims, counterclaims, and defenses in the present litigation pending resolution of all reexamination proceedings involving the patents-in-suit.

*/s/ Laurence R. Tucker*
Laurence R. Tucker #24284
ARMSTRONG TEASDALE, LLP
2345 Grand Blvd., Suite 2000
Kansas City, MO 64108
(816) 221-3420
(816) 221-0786 (fax)
lrtucker@armstrongteasdale.com

Richard L. Byrne
Admitted *Pro Hac Vice*
Paul M. Reznick
Admitted *Pro Hac Vice*
THE WEBB LAW FIRM
700 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: (412) 471-8815
Facsimile: (412) 471-4094

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically with the Court's CM/ECF System, with notice of same being sent to all attorneys of record on July 9, 2009.

*s/ Laurence R. Tucker*
Attorney for Defendant