IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| GRAY MANUFACTURING COMPANY, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STERTIL B.V. and ) <br> STERTIL-KONI U.S.A., INC. ) <br> ) <br> Defendants. ) | Civil Action No. 5:09-cv-06024-HFS |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION OF
DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING
REEXAMINATION OF U.S. PATENT NOS. 6,634,461 AND 7,014,012**

The failure of Plaintiff Gray Manufacturing Company, Inc. ("Gray") to provide any compelling reason as to why a stay should not be awarded in this case further highlights why a stay is appropriate. In its opposition to the motion to stay filed by Defendants Stertil B.V. and Stertil-Koni U.S.A., Inc. ("Stertil"), Gray asserts that Stertil is using the reexamination process to its tactical advantage and to delay this litigation. However, the facts tell a different story. In reality, it was Gray who initially muddied the waters with respect to validity by itself seeking reissue of U.S. Patent No. 6,634,461 ("the '461 patent") in 2005 and filing suit in 2009 on that very patent prior to the conclusion of the reissue process. Gray did so despite the fact that the claims of the '461 patent were subsequently amended. Moreover, despite Gray's creative characterization of the issues involved in this suit, the Stertil device now accused of infringement was not sold or imported in the United States until 2009, and Gray has no basis for asserting that Stertil infringed its rights at any time prior to 2009. Because a stay will allow the Patent Office to narrow and more clearly define the issues regarding the patents-in-suit without prejudicing

1

either party, this Court should stay the litigation until the various outstanding reexamination requests and proceedings are resolved.

## I. Stertil's Motion to Stay is Not Unsupported

Gray alleges that Stertil's motion is unsupported since Stertil has "failed to show that they, in fact, made such requests [for reexamination]." (Dk. 24 at 4.) Gray advances this argument despite having been served, by counsel for Stertil, with copies of the reexamination requests. In fact, Gray even attached the reexamination request for U.S. Patent No.7,014,012 ("the '012 patent") as Exhibit 8 to its Brief in Opposition. (Dk. 24, Exhibit 8.) While Stertil is somewhat shocked that Gray would question the statements of Stertil's attorneys verifying that the reexamination requests had been filed with the Patent Office, Stertil's reexamination requests have each been assigned a control number by the Patent Office, thus confirming that the requests were in fact filed. (*See* Exhibits A and B hereto.) Thus, Stertil considers this issue moot.

## II. Stertil's Motion to Stay is Not Premature

Gray further submits that Stertil's Motion to Stay is premature given that the Patent Office has yet to decide whether or not to grant the requested reexaminations. While Stertil has recently learned that both of its reexamination requests were found by the Patent Office to suffer from minor informalities, Stertil has the right to correct these errors within one month and is in the process of doing so. (*See* Exhibits A and B.) Since, upon filing the corrected papers, it is highly likely the Patent Office will ultimately decide to grant Stertil's reexamination requests, continuing with the case now will only cause the parties to incur additional unnecessary costs related to discovery. Historically, 92% of reexamination requests are granted. (Exhibit C.) Thus, the fact that Stertil's requests have not been granted does not weigh against granting a stay, especially where, like here, the case is in its incipient stages. *See*, *e.g.*, *Nilssen v. Universal*

*Lighting Techs., Inc.*, 2006 WL 38909, at *2 (M.D. Tenn. Jan. 5, 2006); *Ho Keung Tse v. Apple Inc.*, 2007 WL 2904279, at *2 (N.D. Cal. Oct. 4, 2007) ("[i]n light of the 'liberal policy' favoring stays pending reexamination, a court can grant a stay even if the Patent Office is still considering whether to grant a party's reexamination request.") (citations omitted); *Sorensen v. Black and Decker Corp.*, 2007 WL 2696590, at *7 (S.D. Cal. Sept. 10, 2007) (staying the action pending the Patent Office's decision on whether to grant reexamination request). In fact, some courts have shown a willingness to stay litigation even before a request for reexamination has been **filed**. *See*, *e.g.*, *ASCII Corp. v. STD Entertainment USA Inc.*, 844 F.Supp. 1378, (N.D. Cal. 1994) (contrasting cases in which reexamination had already been filed with the situation where reexamination or reissue would soon be filed as a "distinction without a difference").

Accordingly, because the Patent Office has not yet ruled on Stertil's recent reexamination requests, it does not necessarily follow that Stertil's motion to stay is premature. Continuing with discovery while awaiting the Patent Office's decision on the reexamination requests would likely only result in wasted effort by the parties.

### III. <u>Irrespective of the Status of the Recent Reexamination Requests, a Stay is Still Warranted</u>

Even if Stertil had not filed the reexamination requests on July 9, 2009, the present status of the '461 patent warrants a stay of the action. Upon filing the reissue application, Gray admitted that claim 43 of the '461 patent, as originally issued, claimed more than it rightfully could claim. (Exhibit D.) During reissue, Gray has narrowed or cancelled every claim of the '461 patent, including claim 46, which incorporates all of the limitations of subsequently amended claim 43. (*See* Exhibit E, at 2-12 showing the claim amendments made during reissue/reexam.) On April, 28 2008, Gray presented an Amendment cancelling claims 2, 4, 8, 9, 11, 15, 17, 18, 20, 26, 29, 31-43 and 45 and narrowing the remaining claims (with the exception

of claim 46) in an effort to overcome the outstanding rejections of these claims. *Id*. The Patent Office very recently, on August 7, 2009, ruled on the effect of these amendments, and many of the remaining claims still stand rejected. In certain circumstances, these claims may be further amended, and Gray may appeal this rejection. Again, it must be noted that amendments to claim 43 change the scope of dependent claim 46.

When a patent is reissued, the original patent must be surrendered and can no longer be infringed. 35 U.S.C. §252. Where, like here, the claims in the reissued patent are narrower than the claims in the original patent, the patentee has no right to enforce the reissued patent before the date of reissue because the original patent was surrendered and is dead. *See Seattle Box Co. v. Industrial Crating and Packing, Inc.*, 731 F.2d 818, 827 (Fed. Cir. 1984); *see also Wilden Pump & Engineering Co. v. Ingersoll-Rand Co.*, 57 USPQ2d 1567, 1568 (N.D. Cal. 2000) ("[e]ven if plaintiff's reissue application is eventually granted by the PTO, and a new patent is issued, plaintiff's current claims for infringement of the '122 patent will be unenforceable because that patent would no longer exist.") Here, Gray has narrowed each of the claims of the '461 patent. At best, Gray could be awarded a reissue patent having narrowed claims in exchange for surrendering the original '461 patent. Due to the narrowing of the claims by Gray, Stertil can only potentially be liable for activity that infringes the claims of the newly reissued patent, whatever those may eventually be. However, "[b]efore issuance, what the scope of claims will be is something totally unforeseeable," *Spectronics Corp. v. H.B. Fuller Co. Inc.*, 940 F2d 631, (Fed Cir. 1991). Thus, it will be difficult to proceed with this case before the scope of the claims of the reissued '461 patent is known. Instead, this case should be stayed at least until the Patent Office makes a final determination as to the scope of the claims of the reissued '461 patent. Of course, by that time, it is likely that the Patent Office will have also made a

determination as to whether it will grant Stertil's recent requests for reexamination of the '461 and '012 patents, thereby rendering moot Gray's argument that a stay would be premature.

## IV. Plaintiff Will Suffer No Irreparable Prejudice if a Stay is Granted

### A. The Reexamination Proceedings Will Be Expedited

Plaintiff's contention that a stay pending reexamination would likely delay this litigation for more than four years is unsupported and based on an incorrect understanding of Patent Office procedures. While the Patent Office is required, by statute, to use "special dispatch" to resolve reexaminations in general, reexaminations based on patents that are the subject of pending litigation take precedence over any other action taken by the Examiner, including resolution of other reexaminations. *See* Manual of Patent Examining Procedure ("MPEP"), §2286, Eighth Edition, Revised July 2008. For instance, "[w]here a request for *ex parte* reexamination indicates…that litigation is stayed for the filing of a reexamination request, the request will be taken up by the examiner for decision 6 weeks after the request was filed, and all aspects of the proceeding will be expedited to the extent possible." MPEP, §2286. Moreover, the time periods for response to office actions in these reexaminations will normally be set at one, rather than two, months and other procedures will be "expedited to the extent possible." *Id.* The statistics cited by Plaintiff showing the average time between filing an *ex parte* request for reexamination and issuance of a certificate do not take into account that reexaminations involving patents engaged in litigation are granted precedence over <u>any other action by the Examiner</u>, including other reexaminations. *Id*. Since, historically, only 31% of *ex parte* reexaminations involve patents known to be in litigation, the increased effort by the Patent Office to expedite resolution of such reexamination proceedings will greatly decrease the total time between filing and resolution of the reexamination. (Exhibit C.) The pending reissue/reexamination of the '461 patent did not

have the benefit of this expedited procedure since, prior to March of 2009, the '461 patent was not involved in litigation. Thus, Gray's comments regarding the length of the pending reissue proceeding are also misdirected.

Moreover, the issue of delay is at most a secondary consideration. The more fundamental concern is the distinct possibility that the parties and this Court will spend considerable time and hundreds of thousands of dollars in discovery and claim construction directed to claim(s) that will very likely be cancelled or amended.

### B. A Delay in Litigation Pending Reexamination Will Not Irreparably Harm Plaintiff

Gray attempts to draw sympathy from the Court by explaining the irreparable harm it will suffer should a stay in this case be granted. In particular, Gray makes the unfounded accusation that "[t]he parties' dispute in this case began in Spring 2005 and has already been ongoing for *four years.*" (Dk. 24 at 11; emphasis in original). Gray further contends that, should a stay be granted, "Plaintiff is facing nearly *ten years* of unfettered competition from Defendants." (*Id.* emphasis in original.) However, Gray's characterization of the issues involved in this litigation is completely disconnected from reality. The sole basis for Gray's complaint is Stertil's allegedly infringing sales of wireless portable lift systems in the United States. (Dk. 1 at 7-9.) As the evidence will show, Stertil first began advertising and selling the accused wireless portable lift systems in the United States in early 2009. Prior to that date, Gray sold wireless portable lift systems in the United States free and clear from any competition by Stertil. While the parties' dispute over the validity of the '461 and '012 patents may date back to 2005, this dispute has in no way impacted Gray's enjoyment of its patent rights. Stertil's wireless lift device, which is accused by Gray of infringement, does not date back to 2005. Thus, the accusation by Gray that it will be the victim of ten years of unfettered competition from
6

Case 5:09-cv-06024-HFS   Document 25   Filed 08/10/09   Page 6 of 12

Defendants without any possibility of relief is absolutely ridiculous.  Gray's rights under the '461 and '012 patents certainly do not include the right to prevent others from questioning the validity of the patents.  If, as Gray contends, Defendants were impeding on their patent rights before 2009, Gray could surely have brought their complaint earlier.  *See*, *e.g.*, *SKF Condition Monitoring Inc. v. SAT Corp.*, 88 USPQ2d 1038, 1044 (S.D. Cal. Feb. 27, 2008) ("Defendant's failure to request reexamination during that time [before suit was filed when it knew of prior art] does not establish that it was acting with dilatory intent.  The Court notes that Plaintiff could also have filed its complaint earlier if it were concerned about delay.").  Instead, if the case is stayed, Gray will retain the ability to collect money damages for any proven infringement, including infringement that may occur during the period in which the case is stayed, since damages for infringement continue to accrue during the period of the stay.  *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985).  This provides Gray with an adequate remedy at law and precludes any irreparable harm that may result from a stay.

Moreover, Stertil takes exception to Gray's repeated reference to the "foreign" citizenship of Defendant Stertil B.V.  (*See, e.g.*, Dk. 24 at 11, Dk. 1 at 2.)  This fact is not material to the issue of whether or not a stay is appropriate.  Further, these statements completely ignore the fact that co-defendant Stertil-Koni U.S.A. is a Maryland corporation.  Frankly, Stertil finds it insulting for Gray to suggest its status as a St. Joseph, Missouri company should have any sort of bearing on this case.

Furthermore, the Court is reminded that it was <u>Gray</u> who initially called the validity of the '461 patent into question by filing for reissue in 2005.  It was also Gray who has repeatedly and deliberately dragged its heels throughout the reissue proceeding after learning that the '461 patent, if reissued, would be substantially narrowed.  For instance, Gray took a two month

7

extension of time (for a total of five months) in responding to a March 28, 2007 Office Action in which claims 1-45, 47 and 49 were rejected and 46 was objected to, only to submit a response that was determined to be non-compliant by the Patent Office. (Exhibits F and G.) By the time Gray cured the deficiency in its response and filed an amended response on March 24, 2008, four days short of a <u>year</u> had elapsed from the date the Office Action issued. (Exhibit H.) More recently, Gray took an extension of time only weeks after filing the present complaint, and did not respond to the December 29, 2008 Office Action until April 28, 2009. (Exhibit E.) Gray's pattern of delaying resolution of the reissue proceeding has kept Stertil (and likely others) guessing as to the final scope (if any) of the reissued '461 patent. Based on Gray's past behavior, perhaps Gray should not be so quick in accusing others of using the Patent Office as a way of eliciting a tactical advantage.

## V. Reexamination Will Simplify the Issues

The issues presently before the Court will be simplified or even entirely resolved through reexamination of the '461 and '012 patents. For validation as to why a stay is appropriate, one need look no further than the merged reissue/reexamination of the '461 patent presently working its way through the Patent Office. The '461 patent issued with 49 claims. All of these claims have either been cancelled or narrowed during reissue. Thus, <u>none of the claims of the '461 patent, as issued, remain pending</u>. Stertil has now presented, by way of its second request for reexamination of the '461 patent, additional, non-cumulative evidence pointing out why the sole non-rejected claim is not patentable.[1] After the Patent Office has an opportunity to review this new prior art, Stertil believes that no claim of the '461 patent will survive.

---

[1] Gray's accusation that the newly cited prior art is cumulative is incorrect. As more fully set forth in Stertil's recent reexamination requests, the Stertil product manuals teach coordinated movement in a lift system for raising and lowering a vehicle having at least two lift mechanisms including a height sensor engaged between a post and a carriage and communicating a height measurement of the carriage relative to the post to a control device. The

It is also likely the outcome of reexamination of the '012 patent will mirror that of the '461 patent. As mentioned above, each claim of the '461 patent was narrowed and/or cancelled during the merged reissue/reexamination of that patent. By Gray's own admission, "the subject matter of the '461 Patent and '012 Patent is so similar." (Dk. 24 at 14.) In fact, during prosecution of the '012 patent, the Patent Office believed the claims of the '012 patent were so similar to the claims of the '461 patent that it issued an obviousness-type double patenting rejection of the '012 patent claims over the claims of the '461 patent. (Exhibit I.) Essentially, the Patent Office took the position that Gray was attempting to claim through the '012 patent nothing more than an obvious variation of the invention already claimed in the '461 patent. *See* MPEP, §804 ("A nonstatutory obviousness-type double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s).") Rather than dispute this rejection, Gray presented a terminal disclaimer, rendering moot the rejection without having to show that the claims in the two patents were patentably distinguishable. (Exhibit J.) As is apparent from the results thus far of the merged reissue/reexamination of the '461 patent, the originally issued claims of the '461 patent are not patentable. Since the prosecution history of the '012 patent reveals that it is claiming no more than an obvious variant of the unpatentable claims of the '461 patent, the Patent Office, upon reconsideration of the '012 patent, will surely find that its scope is also too broad and require the narrowing or even complete cancellation of the claims of the '012 patent during reexamination.

---

control device of the lift mechanisms communicate with each other including height measurements to coordinate movement of the carriages. Further, the Stertil product manuals disclose the coordinated movement of claim 46.

Allowing this case to proceed after the Patent Office has an opportunity to weigh in on the validity and scope of the claims in view of the new prior art will undoubtedly narrow the issues in the case, especially issues related to discovery and claim construction. *See*, *e.g.*, *Guthy-Renker Fitness, LLC v. Icon Health and Fitness Inc.*, 1998 WL 670240, *2 (C.D. Cal. July 17, 1998) (absent an understanding of the proper scope and validity of the claims, "the parties may end up conducting a significantly wider scope of discovery than necessary"); *Interplast Group, Ltd. v. Coroplast, Inc.*, 2009 WL 1774313, *2 (E.D. Mo, June 23, 2009) ("If the claims are cancelled, claim construction would be irrelevant; if they are amended, claim construction would have to be repeated."). Thus, a stay is warranted.

## VI.    This Case is in its Initial Stages Weighing in Favor of a Stay

Gray does not (and cannot) deny that this case is only in its incipient stages. No trial date has been set, the scheduling conference with the Court has not occurred, and no discovery schedule exists. A stay would clearly save the parties and the Court substantial time and resources by avoiding unnecessary or overbroad discovery. At this point, "[n]either the Court nor the parties have invested such resources as to make a stay pending completion of the reexamination ineffective and inappropriate, and therefore this factor weighs in favor of granting a stay." *Spa Syspatronic, AG v. Verifone, Inc.*, 2008 WL 1886020 (E.D. Tex. April 25, 2008).

Gray presents the bizarre argument that "the fact that litigation is in its early stages does not weigh in favor of a stay where the parties have already incurred substantial costs from pre-litigation activities." (Dk. 24 at 16.) Gray cites no authority supporting this position, most likely because it is wholly illogical. Essentially, Gray is contending that the expenses it has incurred in "defending its patent" over the past four years, in connection with the reissue proceeding it filed, somehow warrant a denial of a stay. However, perhaps one of the greatest advantages of

granting a stay is avoiding unnecessary discovery by narrowing the issues or, if all of the claims are cancelled, avoiding further action entirely. Proceeding with this case before resolution of the parallel proceedings in the Patent Office would likely result in discovery and claim construction on invalid claims, wasting both time and money for the parties and the Court. Even if a stay is denied, Gray will likely have to continue defending its patent before the Patent Office while also spending its time and money, not to mention the time and money of the Court and Defendants, to proceed with the instant litigation. Moreover, it is worth noting that Gray was the one who initially revisited the patentability of the claims in the '461 patent when it elected to file for reissue. That Gray could somehow now use this decision to its advantage (and Defendants' detriment) seems anything but fair.

For the foregoing reasons, a stay is warranted in this case in order to allow the Patent Office an opportunity to weigh in on the validity of the claims of the patents-in-suit in view of the newly cited prior art. This case is only in the very initial stages, and a stay will not unfairly prejudice either party or provide one party with a tactical advantage. Instead, a stay will save the Court and the parties from engaging in unnecessary discovery, claim construction and infringement analysis. Accordingly, Stertil respectfully requests the Court to grant its motion for a stay of this litigation pending the outcome of reexamination of the patents-in-suit.

                                                */s/ Laurence R. Tucker*
                                                Laurence R. Tucker #24284
                                                ARMSTRONG TEASDALE, LLP
                                                2345 Grand Blvd., Suite 2000
                                                Kansas City, MO 64108
                                                (816) 221-3420
                                                (816) 221-0786 (fax)
                                                lrtucker@armstrongteasdale.com

Richard L. Byrne
Admitted *Pro Hac Vice*
Paul M. Reznick
Admitted *Pro Hac Vice*
THE WEBB LAW FIRM
700 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone: (412) 471-8815
Facsimile: (412) 471-4094

Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically with the Court's CM/ECF System, with notice of same being sent to all attorneys of record on August 10, 2009.

*s/ Laurence R. Tucker*
Attorney for Defendant